In the Matter of the Arbitration between FROUGE CORPORA-
TION, Respondent, and NEW YORK CITY HOUSING AUTHORITY,
Appellant.

First Department, October 11, 1966.

Paul W. Hessel of counsel (Michael M. Cohen and I. Stanley
Stein with him on the brief; Harry Levy, attorney), for
appellant.

Sidney O. Raphael of counsel (Benjamin Gassman with him
on the brief; Raphael, Searles & Vischi, attorneys), for
respondent.

*Per Curiam.* Respondent New York City Housing Authority appeals from an order which granted the application of petitioner Frouge Corporation, a contractor, to compel arbitration of a dispute between the parties. The dispute arises out of a construction contract pursuant to which the contractor was employed by the Authority to do foundation and general construction work for a public housing project on Staten Island.

Two issues are presented: did the parties agree to arbitrate the particular dispute and, if so, is the contractor barred from seeking arbitration by virtue of its failure to comply with the condition precedent in the written agreement regarding prompt notification to the Authority of the particulars involved in the claim. It is concluded that under the broad arbitration provision in the agreement, the matter would be arbitrable but that the contractor's delay of over six months in furnishing any reply to the Authority's demand for particulars constituted a waiver of its right to arbitrate this claim.

After public bidding the contract was awarded to the contractor on September 4, 1959. Prior to the contract award, potential contractors were furnished with a document entitled "Instructions to Bidders." This document (which was ultimately attached to the final contract) invited bidders to inspect site borings taken by the Authority as well as other data and reports on subsoil conditions at the project. Bidders were also invited to visit and inspect the site to make their own observations. The "Instructions" document stated, generally, that "there shall be no basis for claims, or adjustments against the Authority by reason of any conditions obtaining on the site" and, specifically, that the Authority would not be liable for any "incorrect information or inaccuracies" contained in the matters submitted preliminarily to the bidders. (Instructions to Bidders, §§ 16[b] and 19[a].) *

---

* "Instructions to Bidders

"Section 16(b) — Samples of earth and rock from various borings may be seen at the office of the Authority. These samples, data, and reports are available for the bidder's information. The data and information thereby obtained or conveyed is not guaranteed to be accurate or correct by the Authority, its Architect or any of its agents or contractors, nor shall such drawings, data or information be considered as part of the Contract Drawings or Documents. No liability shall be imposed upon the Authority nor shall any claim by the Contractor be allowed for damages or Extra Work by reason of any incorrect information or inaccuracies contained or conveyed by such borings, or by any such diagrams, drawings, surveys, maps or samples, or by reason of any conditions in the site which are not disclosed thereby.

"Section 19.(a) — The Bidders shall visit the Site, inspect and accept same as found, and make their calculations accordingly. There shall be no basis for claims, or adujstments against the Authority by reason of any conditions obtaining on the Site."

During the course of its work on the foundations of the buildings, the contractor encountered subsoil conditions which it claimed were "much worse" than had been indicated by the Authority's borings. The contractor wrote several letters to the Authority on this subject and ultimately informed the Authority on July 14, 1960 that "Since the foundation work at the above project is now substantially completed * * * [W]e hereby advise you that we are entitled to compensation * * * for breach of the contract on the part of the Authority". The letter concluded by setting forth a short, nonexclusive list of the contractor's damages, all of which related to increased costs resulting from subsoil difficulties.

Following receipt of this claim letter, the Authority wrote the contractor on July 21, 1960 and requested particulars of the claim, including "such amounts as are estimated for future work". Under section 30(a) of the contract, the contractor was required to furnish this information within five days of the written request. The same section provided that compliance with its terms "shall be a condition precedent * * * to the right of appeal to arbitration."

Concededly, the contractor did not comply with this requirement. It did not correspond with the Authority until February 3, 1961, over six months later, when it briefly outlined the nature of its claim and enclosed computations of its alleged damages. Subsequently, the contractor sent the Authority a notice of its intention to arbitrate the dispute and the Authority replied that the contractor was in default of the contract provisions condition precedent to arbitration. Fruitless discussions between the parties ensued and on January 3, 1964, the contractor commenced this proceeding to compel arbitration.

The Authority opposed the motion. Special Term referred the matter to an Official Referee with instructions to hear and report whether the six months' failure to supply particulars was justified and whether the data ultimately supplied on February 3, 1961 was sufficient.

At the hearing, the contractor's witnesses testified that in July of 1960 it was impossible to assess the damages arising out of extra work in laying the foundations because they were so "intertwined" with subsequent site work which was not concluded until January, 1961. The Referee evidently accepted this contention and held that, under the circumstances, the contractor's failure to comply with the demand for additional data was "justified" by the "unreasonableness of the provision requiring the compliance within five days". The Referee also found that the February 3, 1961 letter constituted a sub-

stantial and proper compliance with the demand for particulars.

The contractor moved to confirm the Referee's report and the Authority cross-moved for its rejection. The Authority then argued for the first time that the dispute was not arbitrable because of the exculpating provisions of sections 16(b) and 19(a) of the "Instructions to Bidders".

Special Term granted the contractor's applications to confirm the Referee's report and to compel arbitration.

Notwithstanding the exculpatory clause, the contractor's claim would be arbitrable. The main arbitration clause is broad (*Matter of Wilaka Constr. Co.,* 17 N Y 2d 195). It specifies that while the Authority shall be the sole judge of the fitness of the work, the parties reserve the right " to have determined by the method in this contract provided all questions relating to compensation, damages, or other payments of money." The use of the all-inclusive term " questions " is important. The parties agreed that no " claims " would lie against the Authority for inaccurate boring information but it does not follow that that very issue, namely, whether claims " would lie against the Authority ", is not a proper " question " for submission to the arbitrator. The parties could have agreed that this matter could not be arbitrated (see *Matter of Eagar Constr. Corp.* v. *Ward Foundation Corp.,* 255 App. Div. 291). But they did not.

It is clear, however, that the contractor waived its right to arbitration of this question. The contract provided that as a condition precedent to arbitration, the contractor was required to furnish particulars of its claim within five days after receipt of the Authority's demand for such particulars. It is settled that the fulfillment of conditions precedent to arbitration presents a question of law for the court (*Matter of Wilaka Constr. Co., supra; Matter of Board of Educ. [Heckler Elec. Co.],* 7 N Y 2d 476). This is so even if certain factual issues exist which must be first decided (*Matter of Brown & Guenther [North Queensview Homes],* 18 A D 2d 327).

It is undisputed that the contractor completed its work on the foundations prior to July 21, 1960. The Authority's letter of that date asked the contractor only to supply a description of the claim and the provisions of the contract to which it related; the acts of the Authority giving rise to the claim; the portions of work involved; and the amount of the claim, including damages to date and an *estimate* for future work. The record establishes that the contractor could have substantially, if not completely, fulfilled the requirements of this request at the time it was sent. It had the option, therefore, to estimate future damages which might result from further difficulties with the subsoil

and it could have reserved the right to amplify its claim if that eventuality arose. Instead, it did nothing.

Nor may its inaction be excused on the grounds that the provision in question is a mere formality. Parallel provisions in a different context have been enforced on the justified assumption that they are an essential part of the agreement between the parties (*Matter of Broadway-40th St. Corp.* [*Manhattan Co.*], 271 App. Div. 219, 221, affd. 296 N. Y. 165; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7502.15, but, see, par. 7502.16 and cases cited). This is particularly true here as respondent should have had this information as quickly as possible either to protect its interests by concurrent investigation or to issue immediate instructions regarding the performance of the work involved in an effort to limit its possible liability.

It is not necessary to pass on the reasonableness or applicability of the five-day limit in the contract provision where it is impossible for the contractor to provide any particulars at all. In this case, the contractor's failure over a period of six months to furnish the Authority with any information constitutes insufficient compliance with this express condition precedent to arbitration. Consequently, its right to arbitration has been barred by its own conduct.

Accordingly, the order of Special Term granting petitioner-respondent's motion to compel arbitration should be reversed on the law and on the facts, with costs and disbursements to respondent-appellant, the petition dismissed and cross motion granted, with costs and disbursements to respondent-appellant.

BOTEIN, P. J., BREITEL, McNALLY, STEUER and CAPOZZOLI, JJ., concur.

Order, entered on July 21, 1965, granting petitioner-respondent's motion to compel arbitration, unanimously reversed, on the law and on the facts, with $30 costs and disbursements to appellant, the petition dismissed and cross motion granted, with $10 costs.